ABRUZZI FOODS, INC.,
Plaintiff, Appellant,

v.

PASTA & CHEESE, INC., and
Carnation Company, De-
fendants, Appellees.

No. 92–1597.

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1992.

Decided March 2, 1993.

Elliott M. Loew with whom Loew & Tam-
kin, Newton, MA, was on brief, for plain-
tiff, appellant.

Sydelle Pittas with whom Powers & Hall,
P.C., Boston, MA, was on brief, for defen-
dants, appellees.

Before BREYER, Chief Judge,
BOWNES, Senior Circuit Judge, and
BOUDIN, Circuit Judge.

BREYER, Chief Judge.

Abruzzi Foods, Inc. brought this diversi-
ty action against a competitor, Pasta &
Cheese, Inc. (and its parent). Abruzzi
claims that Pasta & Cheese has violated
chapter 93A of the Massachusetts code by
"deceptive[ly]" calling its pasta "fresh."
Mass.Gen.L. ch. 93A, § 2(a) (forbidding
"unfair or deceptive acts or practices in the
conduct of any trade or commerce"), § 11
(permitting civil suits by competitors). The
district court granted the defendant's mo-
tion for summary judgment. 687 F.Supp.
20 (D.Mass.1988). Abruzzi appeals. We
affirm the judgment.

The determinative legal question is
whether or not Abruzzi, responding to the
defense motion for summary judgment,
"set forth specific facts," Fed.R.Civ.P.
56(e), which, in this context, would permit a
factfinder to conclude that the defendants'
use of the word "fresh," on its pasta labels
and in its pasta advertising, had the "ca-
pacity or tendency or effect of deceiving
buyers or prospective buyers in any materi-
al respect," Mass.Regs. Code tit. 940,
§ 3.05(1). We have read the record and
conclude that it did not.

Pasta & Cheese sets forth by affidavit,
Fed.R.Civ.P. 56(c), important facts about
the product, namely that it is "not dehy-

drated, frozen or canned," that it is to be "refrigerated ... at the store," that it retains "its fresh appearance, texture, fragrance, and taste," that a buyer is to cook it "in boiling water for very brief periods of time," and that it has a somewhat limited shelf life. Pasta & Cheese also concedes, for argument's sake, that it "pasteurizes" the product to "retard[ ] spoilage" and "preserve ... freshness ... for a commercially reasonable shelf-life period." Abruzzi does not dispute any of these facts. Rather, it seeks to show that calling a "pasteurized" pasta product "fresh" is deceptive.

The fatal problem for Abruzzi consists of its lack of evidence that this is so. Abruzzi cannot appeal to the "common sense" of the matter, for "common sense" does not support its claim. Rather, common sense suggests that the answer to the question, "Does calling this product 'fresh' mislead?" is, "It depends." One might, for example, accurately call pasteurized milk "fresh," in order to distinguish it from condensed or powdered or long-life milk. *See* FDA, Final Rule, Food Labeling, 58 Fed.Reg. 2302, 2403 (Jan. 6, 1993) (*to be codified at* 21 C.F.R. § 101.95) (since "consumers recognize that milk is nearly always pasteurized," there is no danger of deception in calling pasteurized milk "fresh"). But, to call pasteurized orange juice "fresh" is a different matter. *See id.* at 2403; *Coca-Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 318 (2d Cir.1982) (finding plausible the claim that the advertising of pasteurized juice as "as it comes from the orange" was facially false). Of course, pasta is not milk; nor is it like orange juice, for (despite the occasional hint to the contrary) pasta does not grow on trees. All pasta is "artificial" in the sense that it is manufactured; indeed, sophisticated machinery is necessary to produce pasta in "commercial" quantities for supermarkets. In this context, the word "fresh" might well (as Pasta & Cheese argues) distinguish pasta that is soft and cooks quickly and needs refrigeration from pasta that is dried and needs longer cooking time, and lasts almost forever at room temperature. Nor can Abruzzi succeed by pointing to

some special *legal* rule, or legal precedent, that says "pasteurized pasta" is not "fresh" pasta. The federal Food and Drug Administration has recently published rules on the use of the word "fresh." *See* 58 Fed.Reg. at 2401–07, 2426. (Indeed, we have waited to see what they would say.) Those regulations make clear that whether or not the use of such a word is, or is not, deceptive varies, depending upon product and context. The FDA decided not to promulgate a rule or regulation governing the use of the term "fresh" as applied to refrigerated pasta in "extended shelf life" packaging, such as the products before us. *See id.* at 2406, ¶ 335 ("because of the diversity of products in the extended shelf life category [expressly including "pasta products"], [freshness standards] for such products [are] not being addressed in this rule"). Thus, Abruzzi cannot appeal to the FDA rules for support.

■ All this means that Abruzzi must rely upon *record evidence.* And, Abruzzi does not do well in that department. It points to two items. First, its president, Mr. Mario Boccabella, stated in a deposition that "pasteurization" amounts to "precook[ing] a product," which is "going to change the texture and the freshness category of that product tremendously," to the point where "[y]ou're no longer dealing with a fresh product." Other statements by Mr. Boccabella, however, make clear that he believed it is the *drying* of the pasta that makes it "unfresh." He said, for example, that "before that drying pasta [sic] took place, that would be fresh pasta. But once a drying process takes place, it's becoming brittle, ... so it's unfresh." And, we can find nothing in the evidence to which Abruzzi points that would adequately support a finding that Pasta and Cheese's "fresh" pasta is dry and brittle.

■ Second, Abruzzi points to an article in a magazine that says that a different firm not involved in this case uses a pasteurization process for its "fresh" pasta, which process "in actuality, extends product shelf life to 6 months." Even were this article admissible evidence, which it is not,

*see* Fed.R.Evid. 802; *Pallotta v. United States*, 404 F.2d 1035, 1036 (1st Cir.1968) (newspaper article, being hearsay, "clearly unusable" to prove the facts asserted therein); *Staniewicz v. Beecham, Inc.*, 687 F.2d 526, 529–30 (1st Cir.1982) (requiring an exception to the hearsay rule to be shown before a magazine article discussing corporate commercial policy could be admitted); Daniel E. Feld, Annotation, *Admissibility of Newspaper Article as Evidence of the Truth of the Facts Stated Therein*, 55 A.L.R.3d 663 (1974), it is only tangentially relevant to the consumer deception issue.

Taking all Abruzzi's evidence together, we conclude that it would not support factfindings that could bring this case within the scope of ch. 93A's legal term "unfair or deceptive acts or practices." Nor do we see how, given this conclusion, a court could find in Abruzzi's favor on either of two other claims that it made, one under Massachusetts common law and the other under Massachusetts antitrust law, Mass. Gen.L. ch. 93. (Indeed, in respect to this last point, Abruzzi makes no contrary argument.)

For these reasons, the judgment of the district court is

*Affirmed.*