Toomey, J.

DISCUSSION

On March 10, 2000, this matter was before the court for hearing on, inter alia, defendants’ proposed scheduling order. The parties agree that this broker class action, which has been certified, should proceed to the discovery phase.[3] They disagree, however, about the nature and extent of that discovery. In order to pursue their affirmative defenses of waiver and equitable estoppel, defendants seek to serve interrogatories on all 60,000 class members and to depose numerous class members based on the responses to those interrogatories. Defendants argue that, because the information they seek is essential for their affirmative defenses, a judicial refusal to permit them to conduct individualized discovery at this time will deprive them of their right to a fair trial.
Plaintiffs oppose such broad discovery and seek in limine rulings from this court defining the Massachusetts law of waiver and the evidence required to establish that defense. Such a definition, plaintiffs maintain, will enable the court to determine whether the interests of justice require the individualized discovery sought by defendants.
For the following reasons, this Court deems the defendants’ request for individualized discovery to be premature.

BACKGROUND 

Prior to 1991, Paul Revere paid each broker a 55% first year commission on every new disabilfiy policy the broker sold and a 5% commission for renewal of each policy during the second through tenth years of its term (“renewal commissions”). In 1991, the base rate for first year commissions was reduced to 50%; the renewal commissions remained at 5%.
An insured purchaser of a disability policy also had the right to exercise riders to increase the amount of his or her disability coverage in subsequent years. Although the company’s written commission schedule did not expressly provide commissions upon the exercise of riders (“rider commissions”), brokers did in fact receive first-year rider commissions of 55% prior to January 1, 1991 and 50% from January 1, 1991 to January 1, 1995.
On January 1, 1995, Paul Revere revised its commission schedule. The new schedule included disability rider commissions, providing a flat base commission of 10% for the first ten years after a rider was exercised. The 10% commission replaced the commissions Paul Revere had paid brokers for disability riders prior to 1991. Thus, instead of receiving commissions of 50% or 55% for the first year in which the rider was exercised and 5% for the next nine years, brokers received, after 1995, 10% commissions for the first year and for each of the following nine years the rider remained in effect. The reduction in rider commission payments was made applicable even to those disability policies which had been originally issued prior to 1995.
Plaintiffs argue that the reduction in their rider commissions violated their Broker Agreements (“Agreements") with Paul Revere. The parties concur that the Agreements prevented Paul Revere from reducing commissions “under any schedule” and from reducing commissions on “in-force" policies. They part company, however, with respect to the meaning of the controlling language in the Agreements.
The plaintiffs contend that Paul Revere, by its conduct, included rider commissions as part of its commission schedule prior to 1995, treating the exercise of such commissions as new business. Plaintiffs also contend that, because the riders increased the amount of coverage on existing disability policies, the riders ought to be considered “in-force” policies. The plaintiffs conclude, therefore, that commissions on the disability riders were protected by the anti-reduc *576 tion language of the Agreements and were, therefore, insulated from the sort of adjustments effected by defendants.
Paul Revere answers that the language of the Agreements did not prohibit it from reducing rider commissions on disability riders because such riders were not included in any commission schedule prior to 1995 and because the exercise of new riders on existing policies ought not be considered “in-force” policies. This lawsuit centers, therefore, on two major issues, to wit, the definition of “in-force” policies and the question of whether Paul Revere, prior to 1995, implicitly included rider commissions in its commission schedule by treating such riders as new business. The proceedings on plaintiffs’ complaint will likely focus on those issues and the suit will turn on the resolution of the parties’ dispute on those points.

DISCUSSION

A. Waiver and Discovery
In the preliminary skirmishing now at bar, the parties clash on the question of whether defendants should be permitted forthwith to issue interrogatories to 60,000 class members or, rather, be compelled to await resolution of motions in limine seeking to define the constituent elements of waiver.
Plaintiffs suggest that defendants will be unable to demonstrate that the information obtained from individualized discovery will support defendants’ affirmative defenses and, further, that a determination of the legal definition of waiver will preclude the need for individualized discovery. Plaintiffs argue that the information defendants are likely to glean from individualized discovery 1) will be insufficient to support a defense of waiver, 2) is currently available in defendants’ own files and 3) has already been obtained by defendants from the class representatives. Plaintiffs conclude, therefore, that individualized discovery sought from 60,000 class members will be futile; the exercise will thus both unnecessarily delay the trial and needlessly harass class members.
Defendants respond that, under either “waiver by conduct” (the theory espoused by defendants) or “waiver by the manifestation of conscious relinquishment of a known right” (the definition preferred by plaintiffs), defendants ought to be authorized to engage in discovery communications with all class members. Because a judicial endorsement of either definition of waiver will result in defendants’ entitlement to obtain information from every class member, defendants argue, individualized discovery should precede motions in limine regarding the law of waiver.
The court sees no need now to address the question of the applicable definition of waiver nor the questions of the extent and timing of the requested discovery because, for the reasons stated infra, the parties’ arguments regarding both waiver and individualized discovery are premature.
Absent class members are not “parties” for the purposes of discovery and, therefore, discovery of absent class members is generally discouraged. See Roberts v. Heim 130 F.R.D. 416, 423 (N.D.Cal. 1988); Wainwright v. Kraftco, 54 F.R.D. 532, 534 (N.D. Ga. 1972). Where courts have permitted such discovery, defendants have been required to demonstrate that the requested discovery is not unduly burdensome, that the information is relevant to the decision of common questions, and that the information cannot be obtained from the representative plaintiffs. See M. Berenson Co. v. Faneuil Hall Marketplace, Inc. 103 F.R.D. 635, 637 (D. Mass. 1984). Defendants have failed to meet that burden, at least with respect to the breach of contract claim at bar, the resolution of which will guide the course of all subsequent aspects of the instant litigation. This court is unpersuaded that the proposed discovery is material to the fulcrum question of contract interpretation presented here.
At bottom, plaintiffs argue that the Agreements prevented defendants from reducing the amount of rider commissions paid on in-force policies after 1991. Defendants respond that their actions did not violate the Agreements because the explicit language of the Agreements does not include rider commissions. Thus, defendants, in the first instance, posit that there was no breach of contract. They also contend, but only in the alternative, that, if there were a breach, the affirmative defense of waiver insulates them from the consequences of the hypothesized breach. The question of waiver will not be ripe, therefore, until there is a determination that a breach indeed occurred. Because resolution of the breach of contract dispute may either energize the waiver/discovery issues or inter them as moot, this court finds no compelling reason to address the discovery of absent members — an exercise decidedly disfavored by the common law of class actions — until the breach of contract question has been resolved.
B. Bifurcation
A trial court has great flexibility in the management of a class action to ensure that the litigation proceeds efficiently and fairly. See Green v. Wolf Corporation 406 F.2d 291, 298, 301 (2d. Cir. 1968). The effective administration of cases involving a common question of law “will often require the use of the ‘sensible device’ of split trials.” Frankel, “Some Preliminary Observations Concerning Civil Rule 23,” 43 F.R.D. 39, 47 (1968) (“lively awareness of this sensible device should serve to postpone or minimize some of the excessively frightening complications that seem overwhelming from a threshold view of the case”).
At bar, defendants’ proposal to serve interrogatories on approximately 60,000 class members presents an overwhelming complication that may be ameliorated by splitting the trials. Bifurcating the contract and waiver/damages portions of the case will permit trial of the contract dispute to proceed expeditiously and *577 efficiently without compromising defendants’ right to a fair trial. If it is determined, as defendants maintain, that there was no breach of the brokers’ contracts, then establishment of the definition of waiver, resolution of questions of individualized discovery and ascertainment of damages will be wholly unnecessary. If, on the other hand, a factfinder determines that a breach did occur, that determination will be the logical and efficient green light to address the definition of waiver and the nature of any discovery rendered appropriate by resolution of the waiver question. Trial of the waiver vel non issue and the damages claims, if any, may then rationally, and fairly, follow.
Defendants argue that bifurcation will deprive them of the right to a fair trial because they are entitled to have the same jury decide both the question of breach of contract and the question of whether plaintiffs waived their rights to protest a breach. Defendants have presented- no compelling suggestion, however, that the factual underpinnings of their defenses are so interwoven with the factual assertions of plaintiffs claims that “they cannot be independently submitted to a jury without confusion and uncertainty.” See Berenson v. Faneuil Hall, supra, 103 F.R.D. at 637. Consequently, if a subsequent trial on the question of waiver/damages is necessary, the court in that trial may adequately preserve defendants’ rights by instructing the subsequent jury with respect to the meaning of the contract as derived from the work of the precedent trial.

ORDER

For the foregoing reasons, it is hereby ORDERED that
1. Trial of the breach of contract claim presented by the representative plaintiffs will be engaged prior to trial, if any, upon the issue of waiver and damages arising from any such breach.
2. If breach of contract is established at an initial trial, the parties shall file motions in limine with the court in advance of the damages portion of the trial, seeking to establish the legal definition of waiver.
3. Following determination of said motions in li-mine, the court will entertain motions, if any, addressing the extent of discovery inquiries to be permitted of absent members.
4. Trial on the waiver vel non and damages issues will thereafter proceed.

 The pending actions involving agents (Hughes et al) and managers (Richter et al) are not Implicated by this Memorandum and Order.