**BLUE CROSS AND BLUE SHIELD OF NEW JERSEY, INC., et al., Plaintiffs,**

v.

**PHILIP MORRIS, INCORPORATED, et al., Defendants.**

**No. 98 CV 3287(JBW).**

United States District Court, E.D. New York.

April 19, 2001.

Dewey Ballantine LLP, New York City, by Paul J. Bschorr, Vincent R. FitzPatrick, Jr., Jack E. Pace III, Paul B. Carberry, Robert J. Morrow, Dewey Ballantine LLP, Washington, DC, by Martha J. Talley, for plaintiffs Blue Cross, et al.

Arnold & Porter, Washington, DC, by Murray R. Garnick, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, by Kevin J. Dunne, Sedgwick, Detert, Moran & Arnold, New York City, by James T. Conlon, for defendant Philip Morris, Incorporated.

Sedgwick, Detert, Moran & Arnold, New York City, by David M. Covey, Kirkland & Ellis, Washington, DC, by Kenneth N. Bass, for defendant Brown & Williamson Tobacco Corporation.

Greenberg Traurig, LLP, New York City, by Alan Mansfield, Shook, Hardy & Bacon, LLP, Kansas City, MO, by Gary R. Long, for defendants Lorillard Tobacco Company, Lorillard, Inc.

Debevoise & Plimpton, New York City, by Steven Klugman, for defendant Council for Tobacco Research, U.S.A., Inc.

Jacob, Medinger & Finnegan, LLP, New York City, by Barry S. Schaevitz, for defendant Smokeless Tobacco Council, Inc.

Womble, Carlyle, Sandridge, & Rice, PLLC, Atlanta, GA, by R. Dal Burton, Womble, Carlyle, Sandridge, & Rice, PLLC, Winston–Salem, North Carolina, by Thomas D. Schroeder, Ursula M. Henninger, Collier, Shannon, Rill, & Scott, PLLC, Washington D.C., by John B. Williams, for defendants R.J. Reynolds Tobacco Co., and RJR Nabisco, Inc.

Chadbourne & Parke LLP, New York City, by Thomas J. McCormack, for defendant British American Tobacco (Investments) Limited (formerly known as British–American Tobacco Company Limited).

Simpson Thacher & Bartlett, New York City, by Joseph McLaughlin, for defendant BAT Industries P.L.C.

Davis & Gilbert, LLP, New York City, by Bruce M. Ginsberg, for defendant Hill & Knowlton, Inc.

Kasowitz, Benson, Torres & Friedman LLP, New York City, by Leonard Feiwus, for defendants Liggest Group Inc., Liggest & Myers, Inc., and Brooke Group Ltd.

Seward & Kissel, New York City, by Anthony R. Mansfield, for defendant The Tobacco Institute, Inc.

### MEMORANDUM & ORDER

WEINSTEIN, Senior District Judge.

I.  Introduction

Plaintiff, Empire Blue Cross & Blue Shield of New York ("Empire"), sues major tobacco product manufacturers and related entities ("Tobacco") for increased health care costs resulting from deceptions about tobacco use on subscribers' health. Depositions of a random sample of 156 subscribers were sought by the parties to provide insights into Empire's subscriber population as a whole—what members knew, believed, and whether they were "in fact ever induced to act to their detriment because of the alleged fraud." Morrow Aff. of January 8, 2001 ¶ 1. The subscriber depositions incorporate many objections and extensive cross-examination. Admission of plaintiff's clips from the depositions with additional counter-designations would, plaintiff argues, prevent the jury from attentively and fairly considering plaintiff's contentions. The depositions contain in total over 600 hours of testimony. The plaintiff's clips will be presented seriatim, taking about two hours of courtroom time. The subscriber depositions are also relied upon to supply a basis for statistically meaningful inferences of experts who will testify.

Plaintiff proposes to play for the jury portions of approximately fifteen depositions recorded on videocassette—a "sample of a sample" of the 156 member depositions—to show that subscribers were not aware of the relative risks of cigarettes generally, or of low tar, low nicotine, or filtered cigarettes. The testimony will last several hours.

To place these recorded excerpts in context, defendants have designated other portions to be played for the jury at the same time. *See Blue Cross and Blue Shield of New Jersey, et al. v. Philip Morris, Inc., et al.,* 98 CV 3287 (E.D.N.Y. Mar. 20, 2001) (order granting in part motion to preclude "improperly" offering excerpts of documents). Plaintiff objects and contends these "counter-designations" unduly interfere with the presentation of its case.

Because there are so many of these depositions, and they are so complex in their totality and their importance, the plaintiff will be permitted to play the portions it wishes in its case-in-chief without counter-designations. The defendants may do the same in their case after the plaintiff rests.

## II. Law

There appear to be three applicable rules: Rule 106 of the Federal Rules of Evidence, Rule 32(a)(4) of the Federal Rules of Civil Procedure, and the common law practice governing the orderly presentation of proof.

### A. *Federal Rule of Evidence* 106

█ Rule 106 of the Federal Rules of Evidence provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction *at that time* of any other part—or any other writing or recorded statement which ought in fairness be considered *contemporaneously* with it.

Fed.R.Evid. 106 (2001) (emphasis added). The rule is a modified expression of the common law "rule of completeness." *See* Fed.R.Evid. 106 advisory committee's note; Margaret A. Berger, et al., *Evidence* ¶ 106.02[1] (2000); 7 J Wigmore, *Evidence Trials At Common Law* § 2113, p. 653 (J.

Chadbourn ed.1978). Putting aside the question of whether Rule 106 provides an independent basis for avoiding restrictive evidence rules such as those on hearsay, under the principle of this Rule, a trial judge may order an omitted portion of a statement placed in evidence when "necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States v. Jackson,* 180 F.3d 55, 72 (2d Cir.1999), *cert. denied,* 530 U.S. 1267, 120 S.Ct. 2731, 147 L.Ed.2d 993 (2000); *United States v. Castro,* 813 F.2d 571, 575–76 (2d Cir.1987) ("[C]ourts historically have required a party offering testimony as to an utterance to present fairly the 'substance or effect' and context of the statement.").

The rule gives the trial judge authority to avoid a misleading impression "on the spot." *Unites States v. LeFevour,* 798 F.2d 977, 981 (7th Cir.1986). The Advisory Committee cited "two considerations" as the basis of Rule 106:(1) "the misleading impression created by taking matters out of context," and (2) "the inadequacy of repair work when [corrections of misimpressions are] delayed to a point later in the trial." *See* Fed.R.Evid. 106 advisory committee's note. It does not "circumscribe the right of the adversary to develop the matter on cross examination or as part of his [or her] own case." *Id.*

### B. *Federal Rule of Civil Procedure* 32(a)(4)

Rule 32(a)(4) of the Federal Rules of Civil Procedure which applies directly to deposition testimony also incorporates a form of the "rule of completeness," and substantially restates the federal evidentiary rule:

> If only part of a deposition is offered in evidence by a party, than an adverse party may require the offeror to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce other parts.

There is a difference between the two provisions. Rule 106, unlike Rule 32(a)(4), refers to the adversary's right to require the remainder of a writing or recording "at that time"—that is, at the time the partial state-

ment is introduced. Fed.R.Evid. 106; Sol Schreiber, et al., *Moore's Federal Practice* § 32.61[2][b] (3rd Ed.2000).

This linguistic difference is of minimal importance in light of the trial judge's broad discretion to control the order of interrogation under the flexible approach of Rules 106 and 116 of the Federal Rules of Evidence. *Cf.* Fed.R.Evid. 611 advisory committee's note ("Spelling out detailed rules to govern the mode and order of interrogating witnesses and presenting evidence is neither desirable nor feasible. The ultimate responsibility for the effective working of the adversary system rests with the judge."); Sol Schreiber, et al., *Moore's Federal Practice* § 32.61[2][b] (3rd Ed.2000) (differences between Fed.R.Evid. 106 and Fed.R.Civ.P. 32(a)(4) are "largely ... semantic"); *see also Phoenix Assocs. III v. Stone*, 60 F.3d 95, 103 (2d Cir.1995) ("While the wording of Rule 106 appears to require the adverse party to proffer the associated document or portion contemporaneously with the introduction of the primary document, we have not applied this requirement rigidly."); Berger, *Evidence* ¶ 106.02[1] ("[Rule 106] gives courts enormous discretion ...").

### C. Common Law

The formal Rules of evidence and procedure are in tension with the traditional practice, under common law, that a party's presentation of a case ought not to be unduly interrupted or distracted. *Cf. United States v. Jackson*, 180 F.3d at 72 ("The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages"); *Dunning v. Maine Cent. R. Co.*, 91 Me. 87, 39 A. 352 (1897) ("Parties, as a general rule, are entitled to prove the essential facts,—to present to the jury a picture of the events relied upon."); Charles E. Wagner, *Federal Rules of Evidence Case Law Commentary* 775 (2001) ("The prosecution in a criminal case and the plaintiff in a civil case have the burden of proving their claims. In presenting their evidence, they are entitled to present their case in the best light."). The Advisory Committee reaffirmed this principle in con-

sidering Rule 611(b) of the Federal Rules of Evidence governing the scope of cross examination:

A practice of limited cross-examination promotes orderly presentation of the case. *Finch v. Weiner*, 109 Conn. 616, 145 A. 31 (1929) ... It is apparent ... that the rule of limited cross-examination ... becomes an aspect of the judge's general control over the mode and order of interrogating witnesses and presenting evidence, to be administered as such. The matter is not one in which involvement at the appellate level is likely to prove fruitful ... [citing cases]. In view of these considerations, the rule is phrased in terms of a suggestion rather than a mandate to the trial judge.

Fed.R.Evid. 611(b) advisory committee's note. In this connection it is of some significance that the court in the instant case has ordered plaintiff to read portions of documents defendants wished read when portions relied upon by plaintiff were published to the jury. *See, e.g., Blue Cross and Blue Shield of New Jersey, et al. v. Philip Morris, Inc., et al.*, 98 CV 3287 (E.D.N.Y. Mar. 20, 2001).

Commentators have recognized that technological innovations in presenting evidence mean that "rule of completeness" decisions will have an increasingly powerful impact on trial tactics. *See, e.g.*, Paul Zwier & Thomas C. Galligan, *Technology and Opening Statements, A Bridge To The Virtual Trial of the Twenty First Century*, 67 Tennessee Law Review 523, 537 (2000) ("In addition, the more high-tech the presentation, the more the rule of completeness needs to be examined ... The rule of completeness can keep the movie more along the lines of a documentary, rather than a drama, with the jury left to judge the fairness and completeness of the present action once they hear and see both movies; at the same time, it can preview the presentation on a fact-argument basis"); Francis J. Burke, Jr., *The Lawyer's New Presentation Tools of The Trade: Practical Tips*, 21st Century Litigation Trial and Pretrial, American Law Institute – American Bar Association Continuing Legal Education, SE 89 ALI–ABA 269, 277–278 (2000) ("pursuant to the rule of completeness ... [t]he

selection of the final clips to be used is critical because this type of evidence can be extremely powerful or it can be deadly dull.").

### III. Application of Law To Facts

 The potential prejudice defendants face by presenting video clips later in the trial is outweighed by the importance to plaintiff of manageably presenting this evidence to the jury. The Court has viewed many of these depositions and has been impressed by their technical presentation. Given the intelligent jurors (many take detailed notes), the court is confident that defendant's skillful presentation of portions of the depositions in its own case-in-chief will sufficiently overcome the plaintiff's tactical advantage in presenting its clips first.

The sophistication and length of this trial—with scores of expert and lay witnesses and difficult scientific testimony spanning several weeks—warrants proceeding without playing counter-designations with plaintiff's clips. In the case of the more usual other depositions of persons with direct knowledge of details relevant to the case, the parties will continue the practice required by the court of reading or playing counter-designations with specific presentations.

### IV Conclusion

The plaintiff and defendants may play whatever portions of the subscriber testimony they wish in their case-in-chief without counter-designations.

SO ORDERED