Lauriat, Peter M., J.
Loris Aspinall and Thomas Geanacopoulos, individually and on behalf of a certified class (“the plaintiffs”), filed this action against Philip Morris Companies, Inc. and Philip Morris, Inc. (“the defendants”) alleging violations of G.L.c. 93A arising from the defendants’ use of the terms “Lights” and “Lowered Tar & Nicotine” on the packaging of Marlboro Lights cigarettes.
The defendants have now moved for leave to take deposition discovery of 156 to 624 absent class members. The defendants assert that such discovery is warranted due to the size and complexity of the case and is necessary for the defendants to formulate a complete defense. For the reasons set forth below, the defendants’ motion for leave to take absent class member discovery is allowed in part and denied in part.
DISCUSSION
In general, “(a]bsent class members are not ‘parties’ for the purposes of discovery and, therefore, discovery of absent class members is generally discouraged.” Eldridge v. Provident Companies, Inc., 11 Mass. L. Rptr. 575, 2000 WL 576387 (Mass.Super. 2000); see also Teacher’s Retirement System of Louisiana v. ACLN Ltd., 2004 WL 2997957, *1 (S.D.N.Y Dec. 2004); Kline v. First Wester Govt Sec., Inc., 1996 WL 122717, *2 (E.D.Pa. Mar. 1996); In re Worlds of Wonder Sec. Litig., 1992 WL 330411, *2 (N.D.Cal. July 1992).[1] Consequently, courts have deemed such discovery appropriate only in special circumstances. See, e.g., Clark v. Universal Builders, Inc., 501 F.2d 324, 346 (7th Cir. 1971), cert. denied, 419 U.S. 1070 (1974). In order to gain access to absent class members, the party seeking discovery must demonstrate that: (1) the information sought is relevant to the decision of common questions, (2) the discovery is requested in good faith and not unduly burdensome, and (3) the information is not available from the representative parties. Dellums v. Powell, 566 F.2d 167, 187 (D.C. Cir. 1977); Berenson v. Faneuil Hall Marketplace, Inc., 103 F.R.D. 635, 637 (D.Mass. 1984); Eldridge, 2000 WL 576387 at *3; see Clark, 501 F.2d at 340-41.
Many courts have deemed document requests and interrogatories as preferable to depositions with respect to absent class member discovery. Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 1998 WL 241279, *1 (S.D.N.Y. May 1998); see also Transamerican Refining Corp. v. Dravo Corp., 139 F.R.D. 619, 621 (S.D.Tex. 1991). Thus, while there is a heavy burden to justify interrogatories, the burden is even heavier when depositions are sought. Baldwin & Flynn v. National Safety Associates, 149 F.R.D. 598, 600 (N.D.Cal. 1993), citing Clark, 501 F.2d at 34; Redmond v. Moody’s Investor Serv., 1995 WL 276150, *1 (S.D.N.Y. May 1995). The distinction arises out of the “the nature of the deposition processnamefy, the passive litigants are required to appear for questioning and are subject to often stiff interrogation by opposing counsel with the concomitant need for counsel of their own.” Clark, 501 F.2d at 341. As the defendants have requested leave to take a minimum of 156 depositions, their request will be subject to this heightened burden regarding all three prongs of the test.[2]
I. Relevance to the Issue of Common Questions
The defendants contend that due process and fundamental fairness require that they be permitted to conduct absent class discovery in order to rebut the plaintiffs’ aggregated proofs and to challenge class certification and the adequacy of the class representatives. However, the determination of whether or not *304 to subject absent class members to discovery in this case is not that simple or straightforward.[3]
A. Aggregated Proofs
The defendants contend that the plaintiffs are unfairly being permitted to present aggregate proof creating a “fictional composite” plaintiff to suit their needs. In order to rebut the plaintiffs’ theories at trial, the defendants assert that they must be permitted to depose “disparate individuals behind the composite creation.” Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 345 (4th Cir. 1998). The defendants rely primarily on the Fourth Circuit Court of Appeals’ decision in Broussard, which involved ten franchisee plaintiffs claiming that Meineke’s handling of franchise advertising breached the Franchise and Trademark Agreements made between Meineke and each franchisee. Id. at 334. In Broussard, “plaintiffs portrayed the class as a large, unified group that suffered a uniform collective injuiy.” Id. at 344. Yet, they were actually pursuing a “collective breach of contract action on the basis of multiple different contracts” and “breach of fiduciary duty, fraud, and negligent misrepresentation claims on the shifting evidentiary sands of individualized representations to franchises.” Id. at 340-41. Essentially, the Broussard plaintiffs formulated their case by choosing the most compelling injuries and arguments from amongst their class member. Id. As a result, the Fourth Circuit found that the class lacked the commonality and typicality required for certification. See id.
Here, however, the plaintiffs are alleging violations of c. 93A resulting from a single course of conduct by the defendants. See Weld v. Glaxo Wellcome, Inc., 434 Mass. 81, 92 (2001), citing Duhaime v. John Hancock Mut. Life Ins. Co., 177 F.R.D. 54, 64 (D.Mass. 1997) (stating that the requirement of common questions is readily met in cases alleging consumer fraud where the claim alleges a single course of conduct). The defendants are not being forced to defend against a “fictional composite,” because all of the plaintiffs did suffer the same economic injury. Thus, absent class member discovery for this purpose would not be relevant to the decision of common questions.
Next, the defendants assert a right to challenge the plaintiffs’ aggregate proof of deception and materiality, seeking evidence from class members about how important the allegedly deceptive statements were to their purchasing decisions. “(A]n advertisement is deceptive when it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted (i.e. to entice a reasonable consumer to buy the product).” Aspinall & another v. Philip Morris Cos., Inc. & another, 442 Mass. 381, 396 (2004).[4] This objective test turns on the effect that the advertisement “might reasonably be expected to have upon the general public,” rather than on “fine spun distinctions and arguments that may be made in excuse.” See id., at 394, citing Leardi v. Brown, 394 Mass. 151, 156 (1985) (having a “tendency to deceive”), quoting P. Lorillard Co. v. Federal Trade Comm’n, 186 F.2d 52, 58 (4th Cir. 1950).[5] It also contains a requirement of materiality, that is, that the representation “involves information that is important to consumers and, hence, likely to affect the choice of, or conduct regarding, a product.” Commonwealth v. AmCan Enterprises, Inc., 47 Mass.App.Ct. 330, 336 (1999). Proving deceptive acts or practices does not require proof of consumer reliance, intent to deceive, or even the defendant’s knowledge that the representation was false. Aspinall, 442 Mass. at 393 (citations omitted). “The criticized advertising may consist of a half truth, or even may be true as a literal matter, but still create an over-all misleading impression through failure to disclose material information.” Id. at 395. Consequently, an individual class member’s smoking habits or subjective motivation in purchasing Marlboro Lights has no bearing on whether the advertising was deceptive. Aspinall, 442 Mass. at 397.[6]
The defendants argue that absent class member discovery is necessary to determine whether the terms “lights” and “lowered tar and nicotine” are material to consumer decisions. Although extrinsic evidence is required to determine reasonable consumer interpretation of implied claims by defendants, it is unnecessary when the implied claims are self-evident or the claims are explicit. See AmCan, 47 Mass.App.Ct. at 336; FTC v. Brown and Williamson Tobacco Corp., 778 F.2d 35, 41 (6th Cir. 1985). “Certain categories of information are presumptively material, including but not limited to, express claims, claims significantly involving health and safety, and claims pertaining to the central characteristic of the product.” In the Matter of Novartis Corp., 127 F.T.C. 580, 686 (1999), aff'd by 222 F.3d 783, 787 (D.C.Cir. 2000).[7] Clearly, the terms “lowered tar and nicotine” explicitly bear upon a central characteristic of cigarettes that purport to be “lights” and have, at the least, some bearing on health and safety. See id.; see also Price v. Philip Morris Inc., 2003 WL 22597608, *6 (Ill.Cir., Mar. 2003) (“The Court finds that the representation of “Lowered Tar and Nicotine” on the package of Marlboro Lights not only conveyed the message to all consumers that Marlboro Lights possessed a positive health attribute as compared to a regular Marlboro, but also explicitly communicated that the Marlboro Lights cigarette would deliver less tar and nicotine to the consumer than a regular Marlboro”). Even if the terms are not presumptively material, their importance to consumers when choosing to purchase Marlboro Lights is evident, especially because “lights” is part of the name of the product.[8]
Furthermore, the plaintiffs maintain that the defendants intentionally misled consumers.[9] As the SJC set forth in AspinaU, if the plaintiffs are successful in proving that,
*305 [T]he defendants intentionally labeled their cigarettes “Lights” with “lowered tar and nicotine” in order to establish in the individual and collective consumer consciousness the concept that Marlboro Lights are more healthful (or, at least, less unhealthful) to smoke than regular cigarettes, and thereby increase the defendants’ market share of cigarette sales, with full knowledge that most Marlboro Lights smokers would not in fact receive the promised benefits of “lowered tar and nicotine,” then there can be no question that the sales of Marlboro Lights occurred in circumstances that make the sales deceptive under G.L.c. 93A.
Aspinall 442 Mass. at 396-97.
Thus, discovery of absent class members would not be relevant to common questions regarding materiality. However, the defendants may be entitled to some measure of absent class members discovery to investigate whether the beliefs of class members conform to the plaintiffs’ perception of the “reasonable consumer." Such discovery must be limited to interpretation of the terms by the “reasonable consumer,” not reliance on the alleged misrepresentation.
The final “aggregate proof’ that the defendants wish to investigate with absent class member discovery pertains to the plaintiffs’ evidence of injury and damages. As the SJC previously stated, “claiming, as the defendants do, that individual proof is necessary or that benefits will vary widely between smokers, raises a specious issue that, if followed to conclusion, would eviscerate G.L.c. 93A as a remedy to abate this deceptive advertising.” Aspinall 442 Mass. at 398. Consumers of Marlboro Lights were injured, as a matter of law, if they simply purchased a product that was deceptively advertised, regardless of whether or not they received lower tar and nicotine. See id. at 400, 402; Leardi, 394 Mass. at 160. As the plaintiffs claim only economic, not personal injury, absent class member discovery regarding injury is irrelevant. See id. at 392-93.
The plaintiffs advance two theories of damages: statutory damages and actual damages in the amount of the difference in market value between Marlboro Lights as represented and the value that consumers actually received. Aspinall, 442 Mass. at 392 n. 17. The plaintiffs plan to prove the latter “benefit of the bargain” damages with a statistical damages model. The defendants seek absent class member discovery pertaining to the actual damages in order to show that class members, of whom the market is comprised, would have continued to purchase Marlboro Lights at full price had they known that they may not get lowered tar and nicotine.
The plaintiffs’ theory of actual damages does not rely on individual proof and has been approved by the SJC. Id. at 392, 399 (“We agree that ‘the benefit of the bargain’ damages, if proved with reasonable certainty, would be appropriate in this case”). The SJC also observed in Aspinall that, logically, “a truly low tar and nicotine cigarette would have economic worth greater than a comparable regular cigarette, due to the added value of an inherently ‘safer’ cigarette.” Id. at 400. The defendants have failed to put forth any arguments showing that this discovery would be relevant to the decision of common questions of the case.[10]
B. Class Certification
The defendants also seek absent class discovery in order to challenge class certification on the basis that class members are not sufficiently “similarly situated” and that the class representatives do not adequately represent the class. As the SJC noted, the issue of class certification may be revisited and withdrawn or appropriately modified if the class representatives cease to fairly and adequately represent the interests of the class. Aspinall 442 Mass. at 398 n.22. Certification of a G.L.c. 93A class action requires findings that “the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated”; that the class representative “adequately and fairly represents such other persons”; and that the class representative brings “the action on behalf of himself and such other similarly injured and situated persons.” Id. at 391, quoting G.L.c. 93A, §9(2). Although the requirements for a class action pursuant to Mass.R.Civ.P. 23(a) provide a “useful framework for analysis,” they are not to be read as requirements under §9(2). Id.; Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 605 (1985).[11] “(W]hen the judge is deciding a certification request under §9(2), the judge must bear in mind ‘a pressing need for an effective private remedy’ for consumers, and that ‘traditional technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice.’ ” Aspinall, 442 Mass. at 391-92, citing Fletcher, 394 Mass. at 605, quoting Baldassari v. Public Fin. Trust 369 Mass. 33, 40-41 (1975).
As discussed above, because the plaintiffs claim economic, and not personal injury, all class members have been similarly injured and are, thus, similarly situated. Aspinall, 442 Mass. at 393. According to the SJC, the present case consists of “statements made by the defendants which are alleged to be untrue for the overwhelming majority of smokers, with only a very few smokers who fortuitously happened to smoke all their cigarettes in a manner that has resulted in the intake of lower tar and nicotine.” Id. at 398 n.22. Even if the defendants were able to obtain statements in depositions from absent class members that they knowingly compensated, covered vent holes, smoked more cigarettes, or did indeed receive lower tar and nicotine, such statements would only be speculation. As the SJC states, “(s]o far as we are aware, the actual level of tar and nicotine received by an individual smoker is a factor that cannot be measured by any test.” Id. at 398.[12] Furthermore, in that it is unlikely *306 that anyone would smoke a cigarette in the exact same way twice, “it is probable that no smoker received the promised benefit of lowered tar and nicotine every time he or she smoked a Marlboro Lights cigarette.” Id. at 398 n.20.
The defendants’ request to take depositions from absent class members to show how many got lowered tar and nicotine, in order to exclude those individuals from the class or to lead to class decertification, would be irrelevant to the decision of common questions.
Finally, the defendants seek to challenge class certification on the grounds that the class representatives do not adequately protect the interests of class members. The defendants suggest that the theory of actual damages advanced by the plaintiffs may impermissibly compromise the claims of other class members who would have the right to request a full refund upon a showing that they would have never smoked if they knew that Marlboro Lights were not less hazardous.[13] In support of their argument, they cite Smilow v. Southwestern Belt Mobile Systems, Inc., 323 F.3d 32 (1st Cir. 2003). In Smilow, the First Circuit reinstated certification of a c. 93A class in which there was a potential conflict between class members who could seek actual damages and those who could only seek statutory damages. Smilow, 323 F.3d at 43. The First Circuit relied on the plaintiffs’ assertion that if such a conflict developed, class members wishing to assert individual claims for actual damages could opt-out. Id. However, as the defendants point out, Massachusetts law does not permit class action parties to opt-out. Fletcher, 294 Mass. at 602.[14]
Nevertheless, this court concludes that the defendants have failed to meet their burden of proving that discovery regarding this issue is relevant to the decision of common questions. The plaintiffs in this case do claim actual damages, unlike those in Smilow, and there is no indication that a divergence of interests will arise. The defendants have failed to provide any legal basis for distinguishing between new and old smokers and the relief that each should be granted. It is also curious that the defendants have not asserted this concern before now, despite class certification proceedings that went all the way to the SJC.[15] Further, in keeping with the considerations necessary to decide a class certification request under §9(2), difficulty in determining the amount of damages sustained by each class member
should not defeat class certification where the alternative is to leave those aggrieved without a remedy and to permit those who allegedly perpetrated the fraud to keep the ill-gotten gains . . . If liabiliiy is established, creative ways will simply need to be fashioned to disgorge the fraudulently obtained monies and distribute them equitably to the aggrieved class.
Olson v. Energy North, Inc., 9 Mass. L. Rptr. 495, 1999 WL 1332362, *6 (Mass.Super. 1999) (citations omitted).
Thus, the court is in accord with the judgment of the SJC. “Class action is not only an appropriate method to resolve the plaintiffs’ allegations, but, pragmatically, the only method whereby purchasers of Marlboro Lights in Massachusetts can seek redress for the alleged deception.” Aspinall, 442 Mass. at 393. Absent class member discovery on this issue is not relevant to the decision of common questions.
II. Burdensomeness
The defendants have emphasized the fact that the stakes of this case are very high; the plaintiffs stand to recover billions of dollars on behalf of hundreds of thousands of claimants. While it is true that this case is unique in its size and potential for damages, it is also true that successfully resolving a massive class action with the tools of aggregation provides a defendant the economic benefit of achieving a final resolution to all proceedings, not merely one case. See In re Simon II Litigation, 211 F.R.D. 86, 148 (E.D.N.Y. 2002), rev’d on other grounds, 407 F.3d 125 (2nd Cir. 2005). In this case, the defendants’ arguments appear to counter their own interests. There is an “irony inherent in defendants’ attempts to protect absent class members when their real hope is to deny plaintiffs any recoveiy ... A court, recognizing this irony, must be suspicious of defendants’ efforts to protect unnamed plaintiffs, when that protection will, as a practical matter, leave them without a remedy.” Abelson v. Strong, 1987 WL 15872, *2 (D.Mass. July 1987). Here, given the immense size of the plaintiffs’ class, the great number of depositions requested, and the time and effort necessary to obtain such discovery, the defendants’ purpose arguably appears to be to delay further proceedings and to burden the plaintiffs. See On the House Syndication, 203 F.R.D. at 456-57; United States v. Trucking Employers, Inc., 72 F.R.D. 101, 104 (D.D.C. 1976) (describing the dangers present when “discoveiy is sought by a corporate defendant against absent plaintiffs who are individual persons with small potential claims”).
The defendants have not identified any case in which a court has authorized the number of absent class member depositions that they seek here.[16] The defendants point to only one decision of the U.S. District Court for the Eastern District of New York where 156 smoker depositions, the minimum requested in their motion, were authorized. See Blue Cross & Blue Shield of N.J. v. Philip Morris, Inc., 199 F.R.D. 487, 488 (E.D.N.Y. 2001). Still, in Blue Cross, the depositions were not taken of absent class members; they were taken of plan holders of a health insurance company suing Philip Morris to recover increased costs caused by fraud on consumers. Id. at 488. Having no stake in the claim at all, the deponents *307 in Blue Cross cannot be compared to absent class members here.
Moreover, the same court in Schwab v. Philip Morris USA, Inc., denied Philip Morris’s motion for leave to depose 650 absent class members to challenge class certification, and 40,560 absent class members as part of discoveiy on the merits of the claims. Schwab v. Philip Morris USA, Inc., Memorandum and Order (E.D.N.Y. May 2005) (Plaintiffs’ Ex. 26). Schwab involved a class action alleging that Philip Morris fraudulently represented that light cigarettes offered health benefits to smokers in violation of the RICO statute. Id. at 1. Rather than allowing the requested 650 depositions, the court authorized 40 depositions, each 2 hours in length. Id. at 3-4. All other absent class discoveiy regarding the merits of the case was denied. Id. at 6.
Similar to this case, the defendants in Schwab asserted that depositions would provide more complete and reliable information than surveys. Schwab at 4. However, the court found that concern inadequate to warrant such a large undertaking, concluding that “(t]here is no reason to believe that a properly conducted survey could not yield meaningful evidence on the points defendants seek to establish by deposing absent class members.” Id. at 4-5. Sampling and survey techniques are an accepted option for trial courts “facing crippling discoveiy and evidentiaiy costs.” Simon, 211 F.R.D. at 149.[17] In fact, evidence of consumer reaction generally takes the form of market research or consumer surveys. Brown and Williamson Tobacco, 778 F.2d at 41, quoting McNeilab, Inc. v. American Home Products Corp., 501 F.Sup. 517, 525 (S.D.Ñ.Y. 1980); see also Cashmere & Camel Hair v. Saks Fifth Avenue, 284 F.3d 302, 313 (1st Cir. 2002); Schering Corp. v. Pfizer Inc., 189 F.3d 218, 225 (2nd Cir. 1999); Gillete Co. v. Norelco Consumer Products Co., 946 F.Sup. 115, 128 (D.Mass. 1996); Intertek Testing Services NA, Inc. v. Curtis-Strauss LLC, 2000 WL 1473126, *21 (Mass.Super.Ct. 2000).[18] Here, surveys and statistical analysis may actually “provide a more accurate and comprehensible form of evidence” than a mass of depositions where “the plaintiffs are a widely spread group suffering injury from a common action of defendants.” Simon, 211 F.R.D. at 148.
Moreover, the defendants have not shown that due process concerns entitle them to take depositions from absent class members. “The idea that due process and jury trial rights require a particularized traditional form of evidence for each element would make this case and cases like it impossible to try.” Simon, 211 F.R.D. at 147. “Concern for the cost and inconvenience attendant upon numerous depositions supports imposing limits and discipline in the discovery process.” Lang v. Reedy Creek Improvement Dist., 1997 WL 809200, *9 (M.D.Fla. Dec. 1997). As a result, surveys are certainly a viable alternative in this case.
III. Information Not Available from Representative Parties
Given the nature and purpose of the defendants’ discovery, the information that they seek is not available from the representative parties. Therefore, the defendants have met their burden on the third requirement for gaining access to absent class members for the purposes of discoveiy.
ORDER
For the foregoing reasons, the defendants’ Motions for Leave to Take Absent Class Member Discoveiy is ALLOWED in part and DENIED in part. Accordingly, the court makes the following order:
1. The defendants are authorized to take not more than 25 depositions of absent plaintiff class members. Each deposition shall consist of not more than two hours of examination by the defendants and not more than one hour of examination by the plaintiffs; or
2. In the alternative, the defendants are authorized to prepare a set of protocols for the purpose of conducting a survey of a representative sample of absent class members. The protocols and proposed survey shall be served upon the plaintiffs, who shall have 30 days to serve and file any objections thereto. The parties shall thereafter work diligently together to address and resolve any objections. Should the parties fail to do so, either party may apply to the court for further relief. The court reserves the right to assess reasonable attorneys fees and costs against any party it finds has acted unreasonably in attempting to settle on the terms and conditions of the protocols and survey.

 A number of courts have held that “treating absent class members as "parties" for the purposes of discoveiy would undermine one of the fundamental purposes of the rule allowing certification of the class." On the House Syndication, 203 F.R.D. 456, 456-57 (S.D.Cal. 2001), citing Fischer v. Wolfinbarger, 55 F.R.D. 129, 132 (W.D.KY 1971), Wainwright v. Krajtco Corp., 54 F.R.D. 532, 534 (N.D.Ga. 1972). Even the United States Supreme Court has stated that, “[u]nlike a defendant in a normal civil suit, an absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection.” Phillip Petroleum Co. v. Shutts, 472 U.S. 797, 810 (1985).

 “The conduct and scope of discovery are within the sound discretion of the judge.” Solimene v. B. Grauel & Co., KG, 399 Mass. 790, 799 (1987); Cardone v. Boston Regional Medical Center, Inc., 60 Mass.App.Ct. 179, 191 (2003).

 Unlike the plaintiffs in Robertson v. National Basketball Association, 67 F.R.D. 691 (S.D.N.Y. 1975), where absent class member discoveiy was easily granted, the class here is not “composed of fairly finite, readily identifiable members with not insubstantial claims who specifically authorized this litigation and who have financed it since its inception.” Id, at 699.

 In keeping with legislative intent, the SJC in Aspinall construed deception under c. 93A consistent with the FTC interpretation. The FTC clarified the test regarding deceptiveness in the following way: “if, first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and *308 third, the representation, omission, or practice is material.” Aspinall, 442 Mass. at 395, quoting Matter of Cliffdale Assocs., Inc., 103 F.T.C. 110, 165 (1984).

 940 Code Mass. Regs. §6.01, regarding retail advertising, defines a material representation as “any oral, written, graphic or pictorial claim or statement, the disclosure of which has the tendency or capacity to influence the decision of reasonable buyers or reasonable prospective buyers whether to purchase the product.”

 The defendants misconstrue the testimony of the class representatives. While both were aware that the terms were based upon the FTC method, neither knew that the design of the cigarette, rather than the composition of the tobacco, made it lower in tar and nicotine. In addition, the defendants rely on semantics to deny the fact that the class representatives switched to Marlboro Lights because they believed them to be healthier or safer. The qualities of being less harsh and less addictive are health benefits. In questioning the class representatives’ continued use of Marlboro Lights, the defendants also underestimate the efficiency of their own product in causing addiction.

 “In order to rebut the presumption, respondent must come forward with sufficient evidence to support a finding that the claim at issue is not material.” Novartis, 127 F.T.C. at 686. The defendants have not succeeded in this.

 The defendants compare the terms in this case to the term “fresh” in the context of Abruzzi Foods, Inc. v. Pasta & Cheese, Inc., 986 F.2d 605 (1st Cir. 1993), in which the plaintiff claimed that the use of “fresh" on labels for pasteurized pasta was deceptive under c. 93A. The First Circuit held that plaintiffs claim did not fit within the scope of c. 93A because “common sense” did not support the claim that “fresh” was materially deceptive because there was no common understanding of the meaning of “fresh” with regard to pasta. Abruzzi, 986 F.2d at 606-07. On the contrary, the general meaning of “lowered tar and nicotine” is manifest within its own terms.

 The plaintiffs’ position is not unfounded. In Price v. Philip Morris, Inc., the Illinois Circuit Court found that: “The internal Philip Morris documents and testimony introduced as evidence at trial conclusively demonstrate that, as a factual matter, Philip Moms intended to deceive consumers into believing that Marlboro Lights and Cambridge Lights cigarettes were less harmful or safer than their regular counterparts.” Price, 2003 WL 22597608 at *5.

 Moreover, as the Northern District of Illinois federal district court explained in Long v. Trans World Airlines, Inc., 761 F.Sup. 1320 (N.D.Ill. 1991):
Aggregate computation of class monetary relief is lawful and proper. Challenges that such aggregate proof affects substantive law and otherwise violates the defendant’s due process or jury trial rights to contest each member’s claim individually, will not withstand analysis . . . Virtually all circuits that have considered this issue ... have expressly condoned aggregate proofs of damages in other contexts [than antitrust].
Id, at 1327.

 Class actions may only be maintained pursuant to Mass.R.Civ.P. 23 if the court finds that: “(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, [ ] (4) the representative parties will fairly and adequately protect the interests of the class,” (5) “questions of law or fact common to the members of the class predominate over any questions affecting only individual members,” and (6) a class action is the superior to other available methods for fair and efficient adjudication of the controversy." Mass.R.Civ.P. 23; Aspinall, 442 Mass. at 391.

 The defendants have presented research indicating that a smoker’s perceptions of their own smoking habits are a “veiy unreliable” indicator of “actual smoke intake.” H. Wakeham, “R&D Presentation to Board of Directors” (Nov. 26, 1969) (Ex. 31).

 The SJC maintained that the trial court judge “expressly restricted the plaintiffs’ theoiy of actual damages” to the current theory to ensure that individual proof was not necessary and the case focused exclusively on the conduct of the defendants. Aspinall, 442 Mass. at 392.

 In Fletcher the SJC upheld certification of the class for the purposes of the c. 93A claim despite a weak showing on the part of the plaintiffs regarding typicality and commonality, ”reflect[ing] the wide latitude employed in considering the adequacy of the plaintiffs’ allegations with regard to the rule 23(a) requirements.” Fletcher, 294 Mass. at 606. The plaintiff class was decertified on their claims of negligence, breach of warranty, breach of contract, fraud, and deceit theories because common questions were not predominant. Id, at 603. “[QJuestions relating to proximate cause of specific injuries, levels and sources of formaldehyde, installation mechanics, knowledge of defect or danger, adoption of representations, reliance upon misrepresentations, and time of discovery all require[d] individualized proof.” Id, (quoting trial court).

 The SJC did address the defendants’ previous worries concerning the rights of class members who may want to allege future personal injury claims. “The doctrine [of claim preclusion] is grounded on considerations of fairness and judicial efficiency and would not operate to bar a member of a class certified to proceed, as here, only on an economic theory of damages from future pursuit of claims for personal injury unsuitable for class treatment.” Aspinall, 442 Mass. at 397 n. 19.

 The defendants submitted a letter to the court dated November 2, 2005, listing recent tobacco cases in which courts authorized a large numbers of depositions. Of these listed cases, all appear to be instituted by government or corporate plaintiffs, few are class actions, and none appear to authorize deposing absent class members.

 To ensure that the reliability and trustworthiness of survey techniques, the following seven factors should be considered: (1) whether the “universe” was properly defined, (2) whether a representative sample of that universe was selected, (3) whether the questions to be asked of interviewees were framed in a clear, precise and non-leading manner, (4) whether sound interview procedures were followed by competent interviewers who had no knowledge of the litigation or the purpose for which the survey was conducted, (5) whether the data gathered was accurately reported, (6) whether the data was analyzed in accordance with accepted statistical principles, and (7) whether the objectivity of the entire process was ensured. Toys R Us, Inc. v. Canarsie Kiddie Shop, Inc., 559 F.Sup. 1189, 1205 (E.D.N.Y. 1983). “These factors derive from accepted principles of survey methodology and help define when a survey has been properly conducted.” Schering, 189 F.3d at 225.

 Even Philip Morris has used consumer surveys to show consumer reaction to advertisements of a competitor. See Philip Morris Inc. v. Loew's Theatres, Inc., 511 F.Sup. 855, 857 (D.C.N.Y. 1980) (finding that “the survey establishes by a preponderance of the evidence that 37% of those interviewed, the largest block of those answering the open-ended question, believe that the ad establishes that TRIUMPH tastes better than MERIT”).